William G. Easton, J.
This is a proceeding by the plaintiff, a public utility company, for the condemnation of a limited fee to a strip of vacant land to be used for a power line. The defendant Morrison’s answer raised several issues but an injunction has previously issued from this court permitting the plaintiff to actually take immediate possession of the premises involved and to construct at least part of its utility lines thereon and for all practical purposes the said defendant has abandoned and waived any defenses except that of ‘' good faith bargaining”. Hence, the sole issue before this court is “has the plaintiff established that it attempted in good faith to negotiate for the purchase of the limited fee before maintaining condemnation proceedings? ”
*146 This proceeding is controlled by section 4 of the Condemnation Law which provides in part as follows:
“ § 4. Petition to supreme or county court; what to contain. “ The proceeding shall be instituted by the presentation of a petition by the plaintiff to the county court of the county in which the property is situated or to a special term of the supreme court, held in the judicial district in which the property is located setting forth the following facts:
# # *
“ 5. That the plaintiff has been unable to agree with the owner of the property for its purchase, and the reason of such inability. ’ ’
This provision has been construed by the courts to require proof of negotiation in good faith to purchase the property and that the necessity for such proof is jurisdictional. As usual, the burden is upon the plaintiff. (Matter of Bronx Parkway Comm., 176 App. Div. 717; City of Long Beach v. Long Beach Water Co., 209 App. Div. 902; New York Tel. Co. v. Wood, 145 Misc. 481; 90 ALR 2d 211-252.)
Defendant, Morrison, owned about 75 acres of vacant land being substantially rectangular in shape and fronting about 950 feet, more or less, on a public highway known as Biver Boad in the Town of Corning. The rear 35 acres of this land is wooded and a creek separates the wooded area from the land nearest the road which leaves about 40 acres free of woods lying between the creek and the road. The parcel proposed to be condemned is 200 feet wide and running all across the said defendant’s premises substantially in the center portion of the 40-acre parcel. Plaintiff seeks to condemn the absolute fee of this strip of land limited by easements and reservations which are described at length in the petition and provide in substance as follows: The landowner to keep the right of ingress and egress to cross and recross the condemned parcel either by foot or by vehicle, no vehicle to exceed 15 feet in height together with the right to construct and maintain an improved roadway or roadways not to exceed 50 feet in width, said roadways not to be nearer than 200 feel to each other, the roadways shall not he nearer than 25 feet hu any strncdnre or guy wire, landowner l.u have the right to use the surface and subsurface for the growing of crops, pastnreage or oilier similar agricultural purposes providing same shall not interfere with, obstruct, or otherwise impair the use of and endanger, any facilities installed by the plaintiff, or the efficient operation thereof. The plaintiff’s negotiations with the said defendant consisted of two separate *147 sets of discussions, the first period of discussion commencing on July 28, 1962 and ending November 28, 1962, these negotiations having been conducted by an intermediate agent of the plaintiff known as “ Coates Field Service, Inc.” The negotiations were oral and for a 1 ‘ right of wag ” at a price starting at $2,200 and ending at $2,400 which was finally presented on November 28,1962 in the form of a so-called “ letter of intent ” delivered to this defendant along with a written option form which option this defendant was requested to sign and deliver to the plaintiff and which gave the plaintiff for a period of one year the right to purchase the absolute unlimited fee for the sum of $2,400 and the expressed consideration for the option was $1. This letter of intent and option were not retained by this defendant but immediately handed back to the plaintiff’s agent.
At the close of the first series of discussions on November 28, 1962 negotiations were abandoned and apparently the Coates Field Service, Inc., were relieved of their employment in this respect. It was not until June 18 of the next year 1963 that negotiations were reopened with this defendant who was contacted by plaintiff’s employees directly. This second set of negotiations lasted until June 27 with the same price of $2,400 being discussed for a right of way or easement and the defendant being told that if a settlement could not be negotiated condemnation proceedings would be brought to purchase the land in fee. On June 27, 1963 the plaintiff delivered and this defendant retained another “ letter of intent ” so-called and another option form similar to the option form submitted the previous November and which again requested this defendant, for the consideration of $1, to execute and deliver to the plaintiff an option giving the plaintiff the right for a period of one year to purchase the absolute fee, unlimited, for the sum of $2,400.
At no time during any of the two phases of negotiations did plaintiff’s representatives indicate or did the defendant doubt that there was any question about the plaintiff’s representatives’ authority to negotiate, nor did they explain to the defendant the reason for the option method which they were employing, but at all times they told the defendant that if there was a negotiated settlement they would only take a right of way or easement, but that if condemnation proceedings were had they would take an absolute title in fee.
As far as the form of dealings between these parties, two observations are to be made immediately, first, all of the negotiations which plaintiff informed the defendant were for a right of way or easement culminated in limiting these negotiations and *148 asking this defendant to deliver an option for an absolute fee, and second, when condemnation proceedings were commenced the petition did not ask for an absolute fee but submitted certain reservations and easements to this defendant as hereinabove described, which said reservations and easements were not included in the option forms. This defendant, of course, was not a lawyer but apparently knew that the plaintiff was asking him, for the nominal consideration of $1, to hold his property off the market for a period of one year at a price of $2,400 when the evidence reveals that the plaintiff knew that the defendant was holding his property for real estate development. Furthermore, the absolute unqualified fee contained in the option forms would have split the defendant’s land across the middle part of the front 40-acre parcel and would have left the rear 55 acres (including creek and woods) absolutely landlocked and of no practical use. The suggested price of $2,400 for this type of appropriation appears to be entirely unreasonable for the fee of 4.37 acres to be appropriated and the 55 acres which would be landlocked, because the plaintiff’s testimony indicated it was basing its offer on a per-acre value of land to be appropriated.
While the decisions do not hold that it is necessary for the plaintiff to submit a binding offer, yet, it does not seem that this procedure of attempting to negotiate orally for a right of way, always culminating in an attempt to obtain practically a gratuitous option for a period of one year to purchase the unrestricted fee complies with the requirement of negotiation in good faith to purchase the property. It is further the opinion of the court if the option method could by any stretch of the imagination be construed to be an offer (which it is not) then the suggested price of $2,400 for the absolute unlimited fee was entirely unreasonable and unrealistic which the defendant could not be expected to accept by executing and delivering the option requested.
It has been held that a railroad in attempting to obtain an option does not satisfy the requirement of an attempt to purchase land before condemning it. (Michigan Cent. R. R. Co. v. Ferguson, 162 Mich. 220.) The plaintiff has not met the burden of proving negotiating in good faith to purchase the real estate interest described in the petition. In fact, the record does not reveal any effort by the plaintiff to negotiate for the absolute fee with reservations to the defendant as contained in the petition. This was especially true since plaintiff ignored a letter from the defendant’s attorney which expressed a continued willingness to negotiate. Therefore, it becomes necessary for *149 this court to dismiss these proceedings with costs and disbursements, without prejudice of course, to the plaintiff continuing its negotiations and if necessary commencing another condemnation proceeding. In deciding this matter it has not been the function of this court to determine the fair market value of the qualified title in fee to the premises sought to be condemned.